UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

UNITED STATES OF AMERICA                                                                PLAINTIFF

V.                                          No. 3:19-cr-30004

ERIC IRVAN                                                                              DEFENDANT

**OPINION AND ORDER**

Before the Court is Defendant Eric Irvan's motion (Doc. 35) for release from custody pending sentencing. The Government filed a response (Doc. 36) to which Mr. Irvan filed a reply (Doc. 37) without leave of Court.[1]

**I.    Background**

Eric Irvan was charged in a five-count indictment on June 26, 2019, with four counts of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Following a detention hearing on August 7, 2019, Mr. Irvan was released on a $5,000 bond and placed on pretrial supervision. On November 20, 2019, Mr. Irvan pled guilty to count 5 of the indictment, charging him with possession of child pornography. His plea agreement includes a concession by the Government to dismiss the remaining counts of receiving child pornography. The Court accepted Mr. Irvan's plea of guilty but deferred acceptance of the plea agreement until sentencing. Although Mr. Irvan complied with the conditions of his pretrial release, his detention pending sentencing was mandatory under 18 U.S.C. § 3143. As a result, Mr. Irvan was remanded to the United States Marshal's Service ("USMS") pending sentencing.

Since Mr. Irvan's change of plea hearing, the COVID-19 pandemic has drastically altered

---

[1] Given the nature of Mr. Irvan's motion, the Court has considered the reply.

1

life in the United States. The Center for Disease Control recommends that individuals stay home to slow the spread of the virus and avoid gatherings of 10 or more people. Businesses large and small have been forced to close. This Court is not immune to the changes brought about by the COVID-19 pandemic. Mr. Irvan's sentencing hearing, originally scheduled for March 17, 2020, was cancelled on March 15 and has yet to be reset. (Doc. 34). Mr. Irvan remains in the Sebastian County Detention Center (the "SCDC") while he awaits sentencing. According to the Final Presentence Report, the United States Sentencing Guideline recommends a sentencing range for Mr. Irvan of 97 to 121 months.[2] (Doc. 27, p. 13, ¶ 89).

## II.     Motion for Release Pending Sentencing

Mr. Irvan filed the instant motion asking the Court to release him pending sentencing due to the COVID-19 pandemic. He claims the pandemic qualifies as an exceptional reason under 18 U.S.C. § 3145(c) which justifies his temporary release to home confinement and urges that he is a strong candidate for such confinement in light of his compliance with pretrial release and his psychological disorder, which has resulted in his home isolation the past 10 years. Additionally, Mr. Irvan argues that his continued detention violates his Eighth Amendment right to be free from cruel and unusual punishment because the nature of jails makes it difficult to social distance and therefore makes each inmate susceptible to infection. Finally, Mr. Irvan claims that the measures employed by the SCDC have interfered with his Sixth Amendment right to counsel.

### A.     Statutory Basis for Release

The statute governing whether Mr. Irvan's release pending his sentencing is appropriate is

---

[2] Mr. Irvan objected to the application of a two-level enhancement in the Final PSR for knowingly distributing child pornography. (Doc. 26, p. 2). Even assuming the Court sustains this objection at the sentencing hearing, the United States Sentencing Guidelines would recommend a term of imprisonment between 78 to 97 months.

18 U.S.C. § 3145(c). Under 18 U.S.C. § 3145(c), a defendant whose detention is mandatory may be ordered released if he can show: (1) he is not likely to flee or pose a danger to the safety of any other person or the community, and (2) there are "exceptional reasons why [his] detention would not be appropriate." 18 U.S.C. § 3145(c). Because Mr. Irvan pled guilty to a nonviolent felony that involved a minor victim, and because the government did not recommend that no sentence of imprisonment be imposed and did not intend to file a motion for acquittal or new trial, his detention was mandatory under 18 U.S.C. § 3143(a)(2). Thus, Irvan must show that exceptional reasons make his continued detention inappropriate, and that he would not pose a danger to the community if released.

The Court has little doubt that the COVID-19 pandemic would amount to an exceptional reason that could justify an inmate's release in some cases. Nor does the Court doubt the genuineness of Mr. Irvan's concern for his health and safety. However, Mr. Irvan's argument that "continued detention imposes an exceptional risk that [he] will be exposed to carrier of the virus in an environment that can neither contain, adequately test for, or treat the virus, which poses a severe threat to Mr. Irvan's physical and emotional well-being" is far too generalized and speculative to justify his release. (Doc. 35, p. 9). Mr. Irvan does not argue his health makes him more susceptible than most to the virus or that measures specific to the SCDC increase the danger of contracting COVID-19. Rather, Mr. Irvan simply argues that the SCDC as a whole is ill-equipped to protect his overall well-being.

In its response to Irvan's motion, Assistant United States Attorney Amy Driver represents she has discussed with the USMS the "proactive measures" employed at the SCDC targeted at ensuring the safety of all inmates. (Doc. 36, p. 4). For example, the SCDC "has in-house medical staff of nurses and a doctor when necessary." (*Id.* at p. 5). All new inmates are screened for

COVID-19, and any inmate suspected of having COVID-19 is tested. (*Id.* at 5). Were the need to arise, the SCDC could house 120 inmates in medical quarantine. (*Id.*). If an inmate tests positive for the virus, he or she will be placed in one of the medical quarantine units. (*Id.*). The facility "has increased its disinfecting and cleaning supplies as well as its cleaning measures." (*Id.*). Face to face visitations are temporarily banned, and no individuals other than authorized personnel are allowed into the facility. (*Id.*). These measures appear so far to have been successful, as there appear to be no confirmed cases of COVID-19 in the Sebastian County Detention Center.

In addition to generalized risks attributable to the entire SCDC population, Mr. Irvan notes that he is in the suicide watch cell. He alleges that the "cell is at the front of the facility near the booking desk" and "inmates are routinely cycled through this particular cell", with no less than two inmates at a time. (Doc. 35, p. 5). Other than the implication that he comes into contact with more people in this cell, Mr. Irvan fails to demonstrate how his placement in this cell increases his risk of contracting COVID-19, or how the measures discussed above fail to adequately protect his health while in this cell. In light of these measures undertaken by the SCDC and the defendant's failure to identify any exceptional reasons that warrant release particular to him, the Court finds that the COVID-19 outbreak in Arkansas does not constitute an exceptional reason that renders his continued detention inappropriate under 18 U.S.C. § 3145(c).

  **B.  Constitutional Basis for Release**

Mr. Irvan's Sixth and Eighth Amendment claims will also be dismissed. Mr. Irvan argues that his continued confinement violates the Eighth Amendment's prohibition against cruel and unusual punishment because it subjects him to "an unreasonable risk" to his health. In light of the measures employed by the SCDC discussed above, and the absence of evidence that Irvan is at higher risk of contracting COVID-19 compared to the general population, the Court finds no

evidence of deliberate indifference to his medical needs. *See United States v. Graham*, No. 19-cv-185(2)-SRN-KMM, 2020 WL 1685912, at * 6 (D. Minn. April 7, 2020) ("Given the bases for [the defendant's] detention and no evidence that the Jail is unable to effectively monitor or treat him should he contract COVID-19, along with a lack of evidence showing that [the defendant] is at a higher risk of contracting COVID-19 in general, or a higher risk while in custody than if he were released, the Court finds no evidence of deliberate indifference to his medical needs in violation of the Eighth Amendment.") (citing *United States v. McDonald*, No. 2:19-cr-00312-KJD-VCF, 2020 WL 1659937, at *3 (D. Nev. April 3, 2020)).

With respect to his Sixth Amendment claim, Mr. Irvan fails to demonstrate how the limited means of communication has prejudiced him. *Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993) (requiring demonstration of actual prejudice for claim of interference with the right to counsel). Though the SCDC has suspended in-person attorney-client meetings, inmates may communicate with counsel electronically or by telephone. Mr. Irvan is only allowed out of the suicide watch cell once per day, and he notes that those instances sometimes fall outside of his attorney's business hours. This makes it difficult for Mr. Irvan and his attorney to communicate and therefore, according to the defendant, violate the Sixth Amendment.

Mr. Irvan pled guilty in November, so there is no need to communicate with counsel to prepare a defense. Mr. Irvan's counsel submitted his sentencing memorandum nearly two months ago, outlining his objections to the PSR and advocating for a downward variance. It would appear all that is left is to conduct the sentencing hearing, and no further preparatory need which would require a steady flow of communication has been identified for the Court. The Court finds the limited means of communication employed to protect the inmates' health and safety do not unduly prejudice Mr. Irvan. Moreover, the crux of Irvan's argument is not that the SCDC is preventing

him from communicating with his attorney. Rather, Mr. Irvan alleges that the SCDC's measures have made it difficult to coordinate schedules with counsel. Mr. Hill's difficulty in coordinating his schedule with the times his client is allowed outside of the suicide watch cell does not elevate the SCDC's protective measures to a Sixth Amendment violation.

**III.     Conclusion**

IT IS THEREFORE ORDERED that Defendant's motion (Doc. 35) for release pending sentencing is DENIED.

IT IS SO ORDERED this 14th day of April, 2020.

*s/ P. K. Holmes, III*
P.K. HOLMES, III
U.S. DISTRICT JUDGE