IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

UNITED STATES OF AMERICA                                PLAINTIFF/RESPONDENT

VS.                  Case No. 3:19-cr-30004-PKH-MEF-1

ERIC IRVAN                                                           DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Currently before the Court is the Defendant/Petitioner's Petition for Post-Conviction Relief Pursuant to 28 U.S.C. § 2255 filed on May 26, 2022. (ECF No. 61). The United States filed its Response on August 2, 2022. (ECF No. 67) (Under Seal). Subsequently, the Petitioner, having served his sentence of imprisonment, was released from the Bureau of Prisons ("BOP") on June 13, 2023. (ECF No. 77, p. 1). Both parties have submitted briefs on the issue of mootness. (ECF Nos. 79, 80). The case has been referred to the undersigned for report and recommendation.

### I.    BACKGROUND

On June 26, 2019, Defendant/Petitioner, Eric Irvan ("Irvan"), was named in an Indictment charging him with four counts of knowingly receiving child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1), and one count of knowingly possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (ECF No. 1). Irvan was arrested on August 1, 2019, and he appeared for arraignment the following day, at which time he entered a not guilty plea to the Indictment. (ECF Nos. 7, 12). Mr. Matthew Hill ("Hill"), Assistant Federal Public Defender, was appointed to represent Irvan. (ECF Nos. 7, 9). A jury trial was scheduled for September 30, 2019. (ECF Nos. 7, 11). Irvan requested a detention hearing, and one was held on August 7, 2019. (ECF Nos. 7, 13). Irvan was released on bond with terms and conditions of release. (ECF Nos. 13-15).

On November 20, 2019, Irvan appeared with appointed counsel before the Hon. P. K. Holmes, III, U.S. District Judge, for a change of plea hearing. (ECF No. 19). A written Plea Agreement (ECF No. 20) was presented to the Court, and Irvan pleaded guilty to Count Five of the Indictment charging him with possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). The Court accepted Irvan's guilty plea and ordered a presentence investigation. (ECF Nos. 19, 61-14).

An initial Presentence Investigation Report ("PSR") was prepared by the United States Probation Office on January 15, 2020. (ECF No. 23). On January 16, 2020, the Government stated it had no objections to the PSR. (ECF No. 25). On January 29, 2020, Irvan filed his 10 objections to the PSR. (ECF No. 26). Most of Irvan's objections concerned reported facts he disputed or wanted to be corrected that had no bearing on the USSG calculation. One objection concerned Paragraph 43 of the PSR, which reported the specific offense characteristic that, "the defendant knowingly engaged in distribution …," resulting in a two-level enhancement assessed pursuant to USSG § 2G2.2(b)(3)(F). (ECF No. 26, p. 2). Irvan argued he did not knowingly distribute, and his counsel noted that sustaining the objection would result in a Total Offense Level of 28 and an advisory Guidelines range of 78-97 months imprisonment. (*Id*.). Irvan also objected to Paragraph 99 of the PSR which suggested the addition of a condition of supervised release prohibiting Irvan from possessing, using, or having access to a computer or any other electronic device that has internet or photographic capabilities. (*Id*. at 3-4).

On February 11, 2020, a final PSR was submitted to the Court. (ECF No. 27). The Probation Officer addressed Irvan's objections in an Addendum to the PSR, and no significant changes were made to the PSR. Regarding Irvan's objection to the two-level enhancement for knowingly engaging in distribution of child pornography, the Probation Officer noted that Irvan

utilized a peer-to-peer program to download child pornography, that he made the files available for download for other users, and that investigators were able to successfully download files of child pornography from Irvan's IP address, so the enhancement was correctly applied. (ECF No. 27-1, pp. 1-2).

The final PSR determined that Irvan's conduct called for a base offense level of 18. (ECF No. 27, ¶ 41). Finding that the material involved a prepubescent minor or a minor who had not attained the age of 12 years, the offense level was increased by two levels. (*Id.*, ¶ 42). A two-level increase was assessed because Irvan knowingly engaged in distribution. (*Id.*, ¶ 43). A four-level increase was assessed because the offense involved material that portrays sadistic and masochistic conduct or other depictions of violence. (*Id.*, ¶ 44). A two-level increase was applied because the offense involved use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with intent to view the material. (*Id.*, ¶ 45). Finally, because Irvan possessed at least 600 or more images (8,327), a five-level enhancement was added. (*Id.*, ¶ 46). Due to these enhancements, Irvan's Adjusted Offense Level was determined to be 33. (*Id.*, ¶ 50). After a three-level reduction for acceptance of responsibility was made, Irvan's Total Offense Level was determined to be 30. (*Id.*, ¶¶ 52-54). Irvan's lack of criminal history resulted in a criminal history score of zero, placing him in criminal history category I. (*Id.*, ¶ 63). The statutory maximum term of imprisonment for Irvan's offense is 20 years. (*Id.*, ¶ 88). Based upon a Total Offense Level of 30 and a criminal history category of I, Irvan's advisory Guidelines range was determined to be 97 to 121 months imprisonment. (*Id.*, ¶ 89).

Irvan's counsel filed a Sentencing Memorandum on February 25, 2020. (ECF No. 29). In it, AFPD Hill argued for a downward variance because Irvan's characteristics showed "a very

pathetic man with significant mental health issues"; the Guidelines for child pornography offenses produced a sentence that is greater than necessary and unduly harsh; that a sentence of less than 36 months imprisonment is sufficient but not greater than necessary; and that a sentence of less than 36 months imprisonment avoided unwarranted sentencing disparities. (*Id*.). A letter from Irvan's mental health therapist, Joshua Pursifull, LPC, with Quapaw House, Inc., was attached to the Sentencing Memorandum. (ECF No. 29-1). It detailed Irvan's diagnoses of Schizoid Personality Disorder and Unspecified Anxiety Disorder, and LPC Pursifull opined that "there is nothing in his diagnosis … that indicated pedophilic tendencies." (*Id*.).

Sentencing was set for March 17, 2020 (ECF No. 24), but the COVID-19 Pandemic intervened. Irvan first sought release from pretrial detention due to COVID-19 on March 26, 2020. (ECF No. 35). That motion was denied on April 14, 2020. (ECF No. 38). Three months later, with COVID-19 continuing to spread, Irvan again moved for release pending his sentencing. (ECF No. 39). The Court granted his motion on June 19, 2020, releasing him from custody pending his sentencing. (ECF No. 41).

Having undergone a psychosexual evaluation and risk assessment on November 30, 2020, the report of the examining psychologist, Sam Wallace, Ph.D., LPC, was filed on January 20, 2021. (ECF No. 46-1). For reasons more fully explained in his report, Dr. Wallace opined that, diagnostically, he believed Irvan "more closely resembles individuals with an Autism Spectrum Disorder" rather than a Schizoid Personality Disorder. (*Id*. at 12). Dr. Wallace noted "[h]is encounters with child pornography may have occurred secondary to his fixation on video games that he was searching for through a peer to peer network program," and "[h]e did not appear to grasp the gravity of what it meant to encounter this material which he reported occurring as far back as ten years ago." (*Id*.). Continuing with his analysis, Dr. Wallace felt that Irvan's condition

"has predisposed him to abnormal behaviors," and he recommended treatment interventions that focused on "habilitation of his social deficits including social norms and sexual norms/laws," among other things. (*Id*.).

Defendant's Supplemental Sentencing Memorandum was filed on May 5, 2021. (ECF No. 49). Noting that "Mr. Irvan's diagnosed conditions set him apart from others charged with similar conduct," and Irvan's compliance with the conditions of his release, AFPD Hill argued for a sentence of time-served, plus a term of home confinement, to be followed by ten years of supervised release. (*Id*. at 4).

A Final Revised PSR, including victim impact statements, a letter of support, and a Second Addendum was submitted to the Court on May 17, 2021. (ECF No. 53).

Irvan appeared for sentencing on May 26, 2021. (ECF Nos. 55, 60). After finding that Irvan had the sophistication and knowledge to download and use the peer-to-peer file-sharing program, and that Irvan failed to demonstrate ignorance on his part, the Court overruled Irvan's objection to the two-level enhancement for distribution. (ECF No. 60, pp. 5-6). The Court noted that Irvan had a bachelor's degree in accounting and "obviously is an intelligent person." (*Id*. at 6; ECF No. 53, ¶ 81). The Court determined that Irvan's Total Offense Level was 30 and his criminal history category was I, resulting in an advisory Guidelines range of 97-121 months imprisonment; a term of supervised release of five years to life; a fine in the range of $30,000 to $250,000; a mandatory special assessment of $100; and an additional assessment of $5,000. (ECF No. 60, pp. 9-10).

Arguing on behalf of Irvan, AFPD Hill reiterated that the Guidelines for child pornography offenses produce a sentence that is greater than necessary; that Irvan "is a person compromised by mental disease as well as a developmental disorder," "a man with autism spectrum disorder," and

one who presents a low risk of reoffending; and he suggested a sentence of time served, a period of home confinement, and a long term of supervised release was appropriate. (ECF No. 60, pp. 11-15). Irvan exercised his right to allocution, apologizing to the victims, expressing his regret, and stating "I'm done with file-sharing programs completely for sure after all this." (*Id*. at 15-16).

Agreeing that the Guidelines "are just not helpful at all" as they relate to child pornography offenses, and that "[t]hey don't distinguish between the worst offenders and the least offenders," the Court found that the Guidelines range of 97 to 121 months imprisonment "far exceeds what an appropriate sentence should be." (ECF No. 60, p. 18). The Court varied downward from the advisory Guidelines range to impose a sentence of 36 months imprisonment; a term of supervised release for five years, with a special condition that, except for purposes of employment, Irvan shall not possess, use, or have access to a computer or any other electronic device that has internet or photography capabilities without prior approval of the United States Probation Office; payment of $12,000 in restitution; no fine; and a $100.00 special assessment. (*Id*. at 19-22). The Court added its recommendation that Irvan be placed in a BOP facility where he can receive mental health treatment. (*Id*. at 22). Judgment was entered by the Court on May 28, 2021. (ECF No. 56). Irvan did not pursue a direct appeal.

On May 26, 2022, Irvan filed his timely Petition for Post-Conviction Relief Pursuant to 28 U.S.C. § 2255. (ECF No. 61). The Petition asserts six grounds for relief – all claims of ineffective assistance of trial counsel: (1) failing to investigate the mental health condition of the accused; (2) failing to advocate for a disabled client; (3) failing to obtain a full mental health evaluation for autism; (4) failing to effectively bring the mental health condition of the accused to bear; (5) failing to effectively advocate for the accused in the pre-sentence investigation; and (6), failing to effectively represent the accused at sentencing. (*Id*. at 21-27). He contends he was prejudiced in

two categorical ways because of the ineffective assistance of counsel: first, that opportunities for alternative resolutions short of trial were lost, and second, at sentencing. (*Id.* at 27-30).

The United States filed its Response in opposition to the Petition on August 2, 2022. (ECF No. 67) (Under Seal).

An evidentiary hearing was initially scheduled for May 18, 2023. (ECF No. 69). On April 12, 2023, the United States filed an unopposed motion to continue the evidentiary hearing because Petitioner was scheduled to be released from the BOP on June 13, 2023, and "both parties agree that if the defendant is released, such would impact the claims currently before the Court." (ECF No. 74). An extension was requested to allow time to confirm the Petitioner's release from the BOP, and to allow his counsel time to readdress the viable grounds raised in the motion pursuant to 28 U.S.C. § 2255. (*Id.*). The extension was granted, with the evidentiary hearing being rescheduled for September 7, 2023. (ECF No. 75). On August 4, 2023, the Petitioner moved for a continuance, stating that he had been released from the BOP on June 13, 2023, that "maybe this case is moot," and that "[e]ven if [he] were granted a shorter sentence, he'd still be on supervised release in any event. Therefore, the case appears moot." (ECF No. 77). The evidentiary hearing scheduled for September 7, 2023, was canceled, and the parties were directed to submit briefs on the issue of mootness. (ECF No. 78). Petitioner filed his Brief on Mootness on September 12, 2023. (ECF No. 79). The United States filed its Brief on the Issue of Mootness on October 4, 2023. (ECF No. 80).

## II.   DISCUSSION

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Irvan's Petition, the United States' Response, the parties' briefs on the issue of mootness, and the record in this case, conclusively shows that Irvan's Petition is moot and there is no justiciable case or controversy before the Court. The undersigned recommends the dismissal of Irvan's § 2255 Petition with prejudice.

### The Question of Mootness

The federal habeas statutes require that a habeas petitioner must be *in custody* under the conviction or sentence under attack at the time his petition is filed. *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); 28 U.S.C. § 2255(a). Irvan was in the custody of the BOP serving his sentence of imprisonment at the time his § 2255 Petition was filed. His status changed, however, when he was released from the BOP on June 13, 2023. "The more substantial question, [then], is whether [Irvan's] subsequent release caused the petition to be moot because it no longer presents a case or controversy under Article III, § 2, of the Constitution." *Spencer*, 523 U.S. at 7. For the reasons discussed below, the undersigned finds that Irvan's release from the BOP has caused his Petition to become moot because it no longer presents a justiciable case or controversy.

"This case-or-controversy requirement subsists through all stages of federal judicial

proceedings, trial and appellate…. The parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Spencer*, 523 U.S. at 7 (internal citations omitted). "This means that, throughout the litigation, a plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Id*. An incarcerated prisoner's challenge to the validity of his conviction always satisfies the case-or-controversy requirement because the incarceration constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction. *Id*. "Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole–some 'collateral consequence' of the conviction–must exist if the suit is to be maintained." *Id*.

### 1.     Irvan's Petition Does Not Challenge the Validity of His Conviction

Citing *Owen v. United States*, 930 F.3d 989 (8th Cir. 2019) and *Giese v. United States*, 853 F. App'x 46, 47 (8th Cir. 2021), both parties agree that the Eighth Circuit recognizes mootness when the only challenge made in the habeas proceeding concerns the length of sentence and the petitioner has been released from prison. They disagree, however, that such are the circumstances in the present case.

While Irvan states in his Brief on Mootness (ECF No. 79) that his claims involve "whether he should have been charged at all," and that his Petition "seeks to set aside the conviction as a whole," a careful reading of the Petition does not support such a broad construction. At their core, all Irvan's claims for habeas relief concern the alleged failure of his trial counsel to either adequately investigate or advocate for him based on his mental health condition – autism spectrum disorder. He asserts that counsel failed to investigate his mental health conditions "as a mitigating factor diminishing responsibility …," and "whether the defendant's mental state at the time of the

offense might support a … claim in mitigation of sentence, or a negotiated disposition." (ECF No. 61, ¶¶ 64-65). He states that counsel's failure to advocate based on his autism spectrum disorder denied him "protections as a disabled person under the Rehabilitation Act, including obtaining appropriate accommodations and freedom from discrimination …" (*Id*., ¶ 66). He faults counsel for failing to seek a full mental diagnostic evaluation, "so that correct diagnosis might support a more favorable negotiated disposition, a lower sentence, appropriate conditions of confinement and appropriate forms of supervision." (*Id*., ¶ 68). He complains that counsel should have brought Dr. Wallace's diagnosis of autism spectrum disorder to bear "on the proper negotiated resolution with the government, the presentence investigation, and sentencing." (*Id*., ¶ 69). His fifth and sixth grounds for relief – failure to effectively advocate for Irvan during the pre-sentence investigation and at sentencing – clearly relate only to the length of sentence and the conditions of his confinement, not the validity of his conviction. (*Id*. at 23-27).

Further, Irvan's allegations concerning prejudice from the lost "opportunities for alternative resolutions short of trial" are founded upon the mere hope that his autism spectrum disorder would have resulted in the exercise of prosecutorial discretion in arriving at a more favorable outcome. Importantly, nowhere in his Petition does Irvan assert that his guilty plea to one count of possession of child pornography (the least serious of the five counts brought against him) was not knowingly and voluntarily made, and that but for counsel's deficient performance he would have persisted in his not guilty pleas and insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (a defendant who complains that ineffective assistance of counsel led him to accept a plea offer rather than proceeding to trial must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial).

Irvan urges the Court to consider the Affirmation of attorney Mark J. Mahoney (ECF No.

61, pp. 33-36; ECF No. 61-1). Mr. Mahoney, though, and as pointed out by the United States, concludes:

> In this case, although the potential was there for great misunderstanding, and although the practice was well below standard, **I do not see that particular predudice arose from the entry of the plea itself**. However, it fits in with the overall problem of failing to take mental health concerns into account.

(ECF No. 61-1, ¶ 166) (emphasis added).

Finally, to the extent the Petition's conclusion is considered a prayer for relief, it does not seek to have Irvan's conviction vacated or set-aside, but only that the Court "grant the Petitioner post-conviction relief." (ECF No. 61, p. 43-44).

Upon such record, the Court cannot conclude that Irvan's Petition "seeks to set aside the conviction as a whole." The Petition does not challenge Irvan's knowing and voluntary guilty plea, but instead, seeks only post-conviction relief from the sentence imposed – a sentence which has now been served. Accordingly, *Owen* and *Giese* control, and the case has become moot.

### 2. No Continuing Injury

Irvan notes that he is on supervised release for five years until June 2028. (ECF No. 79, p. 1). This is true, but Irvan's Petition does not dispute the length of his term of supervised release, which at five years is the minimum for his offense of conviction. (ECF No. 53, ¶ 90). His counsel acknowledged: "Even if petitioner were granted a shorter sentence, he'd still be on supervised release in any event. Therefore, the case appears moot." (ECF No. 77, p. 2). This is in accord with *Owen*, 930 F.3d at 990, which held, "the mere fact that [defendant] is serving an unexpired, *unchallenged* term of supervised release does not sustain an actual controversy."

Irvan also argues that being on the Arkansas sex offender registry for a minimum of 15 years is a collateral consequence of his conviction which keeps his case from being moot. (ECF

No. 79, p. 2). The Court disagrees.

While the Eighth Circuit has not yet addressed whether state mandatory requirements to register as a sex offender may be considered a direct continuing injury rather than a mere collateral consequence of a sex offense conviction, other courts who have considered the issue have rejected similar arguments. *See, e.g., Calhoun v. Att'y Gen. of Colo.*, 745 F.3d 1070, 1074 (10th Cir. 2014) ("we join the circuits uniformly holding that the requirement to register under state sex-offender registration statutes does not satisfy § 2254's condition that the petitioner be 'in custody' at the time he files a habeas petition"); *Wilson v. Flaherty*, 689 F.3d 332, 337 (4th Cir. 2012) ("every court of appeals to have considered whether the registration requirements imposed on sex offenders place the sex offender in custody for purpose of habeas jurisdiction has concluded that they do not"); *Virsnieks v. Smith*, 521 F.3d 707, 718 (7th Cir. 2008) ("courts have rejected uniformly the argument that a challenge to a sentence of registration under a sexual offender statute is cognizable in habeas").

The Court in *Virsnieks* noted that although failure to comply with the registration requirements could lead to future incarceration, "this potentiality …, dependent entirely on whether [the petitioner] chooses to obey the [state] statute, actually makes the sex offender law very similar to the restitution orders that other courts have found not to create custody." 521 F.3d at 719. The Court also held that where a state sex offender registration statute is remedial, rather than punitive, it "is more analogous to collateral consequences than to 'severe restraints on freedom of movement.'" *Id*. The Eighth Circuit has held that "the [Arkansas] General Assembly's intent in enacting the Registration Act was to protect public safety, and not to punish sex offenders." *Weems v. Little Rock Police Dept.*, 453 F.3d 1010, 1017 (8th Cir. 2006) (citing *Kellar v. Fayetteville Police Dept.*, 339 Ark. 274, 5 S.W.3d 402, 407 (1999)). Since the Arkansas Sex

Offender Registration Act, Ark. Code Ann. § 12-12-901, *et seq.*, has been found to be remedial in nature, and not punitive, Irvan's placement on the registry does not satisfy the "in custody" requirement for purpose of federal habeas jurisdiction.

### III.   CONCLUSION

For the reasons and upon the authorities discussed above, Irvan's case became moot when he was released from the BOP on June 13, 2023. A case or controversy under Article III, § 2, of the Constitution is no longer present, and it is recommended that Irvan's Petition for Post-Conviction Relief Pursuant to 28 U.S.C. § 2255 (ECF No. 61) be **DISMISSED with PREJUDICE**.

Since the Eighth Circuit has yet to address the issue of whether state mandatory requirements to register as a sex offender may be considered a direct continuing injury rather than a mere collateral consequence of a sex offense conviction, the undersigned would authorize a Certificate of Appealability on that issue.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 8th day of November 2023.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE